CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

**March 25, 2024**
LAURA A. AUSTIN, CLERK
BY:
/s/T. Taylor
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| HASSAN SHARIF ALI, | ) | |
| Petitioner, | ) | Civil Case No. 7:23-cv-00069 |
| v. | ) | |
| | ) | |
| J.C. STREEVAL, | ) | By: Elizabeth K. Dillon |
| Respondent. | ) | United States District Judge |

**MEMORANDUM OPINION**

Hassan Sharif Ali, a federal inmate proceeding *pro* se, filed this petition for a writ of

habeas corpus pursuant to 28 U.S.C. § 2241, challenging disciplinary action taken against him

while he was previously incarcerated at United States Penitentiary (USP) in Pollock, Louisiana.

(Habeas Pet., Dkt. No. 1.)  The respondent moves to dismiss for failure to claim, or in the

alternative, for summary judgment.  (Dkt. No. 5.)  The court will treat this motion as a motion

for summary judgment, which will be granted.

I.  BACKGROUND

**A.  Introduction**

Petitioner is currently incarcerated at the United States Penitentiary in Lee County,

Virginia.  He was housed at USP Pollock, Louisiana, from September 28, 2016, through

November 22, 2017.  Ali challenges the outcome of and proceedings before a Discipline Hearing

Officer (DHO) at USP Pollock.

**B.  Inmate Discipline Program**

Pursuant to authority delegated by the United States Congress, the Bureau of Prisons

(BOP) has promulgated rules for inmate discipline.  *See* 28 C.F.R. § 541.  Under these rules,

BOP staff prepares an incident report (IR) when they reasonably believe that an inmate has

violated a BOP regulation.  *See* 28 C.F.R. § 541.5(a).  Staff provide the inmate with a written

copy of the charges against him, ordinarily within twenty-four hours of the time staff became aware of the inmate's involvement in the incident.  28 C.F.R. § 541.5(a).

An investigating officer informs the inmate of the charges and asks for the inmate's statement concerning the incident.  The officer advises the inmate of his right to remain silent, informing him that his silence may be used to draw an adverse inference against him.  The officer further explains that the inmate's silence alone may not be used to support a finding that the inmate committed a prohibited act.  28 C.F.R. § 541.5(b).

After the inmate is advised of the charges and his rights, and after the staff investigation is completed, a Unit Disciplinary Committee (UDC) reviews the incident report.  28 C.F.R. § 541.7.  The UDC is tasked with reviewing the IR within five working days after it is issued.  The inmate is permitted to appear in person or electronically at the UDC review of the IR, except during deliberations, or when the inmate's presence could jeopardize institutional security.  The inmate is entitled to make a statement and to present documentary evidence on his own behalf at the UDC review.  *See* 28 C.F.R. §§ 541.7(c), (d), (e).  After considering all of the evidence presented at the review, the UDC makes a decision on the IR.  The UDC's decision must be based on some facts, and if there is conflicting evidence, based on the greater weight of the evidence.  28 C.F.R. § 541.7(e).

The UDC finds (1) the inmate committed the prohibited act(s) as charged, and/or a similar prohibited act if reflected in the incident report, (2) the inmate did not commit the prohibited act charged, or (3) refers to the case to the DHO for further proceedings.  *See* 28 C.F.R. § 541.7(a)(1)–(3).  When an alleged violation of the BOP rules is serious and warrants consideration for other than minor sanctions, the UDC refers the charges to the DHO for further proceedings.  28 C.F.R. § 541.7(a)(4).

When charges are referred to the DHO, the UDC advises the inmate of his rights at the hearing that will occur before the DHO.  28 C.F.R. § 541.7(g).  Those rights include having a staff representative and/or witnesses present at the DHO hearing.  28 C.F.R. § 541.8.  If the inmate desires, a staff representative will be available to assist the inmate and help the inmate understand the charges and potential consequences.  The staff representative may also assist the inmate by speaking with and scheduling witnesses, obtaining written statements, and otherwise helping the inmate prepare evidence for presentation at the DHO hearing.  *See* 28 C.F.R. § 541.8.

The DHO considers all evidence presented at the hearing and bases his/her decision on at lease some facts, and if there is conflicting evidence, on the greater weight of the evidence.  *See id.*  The DHO then makes one of the following findings: (1) the inmate committed the prohibited act charged and/or a similar prohibited act as reflected in the incident report, (2) the inmate did not commit the prohibited act charged, or (3) refers the incident back for further investigation, review, and disposition.  28 C.F.R. § 541.8(a).

The DHO also prepares a record of the proceedings, which need not be verbatim.  The record documents the advisement of inmate rights, the DHO's findings, the DHO's decision and the specific evidence relied upon by the DHO.  It also includes the reasons for the sanctions imposed.  28 C.F.R. § 541.8(h).

## C.  Incident Report 2985842

On May 11, 2017, USP Pollock staff member M. Hastings prepared IR 2985842 charging Ali with Possession of a Cellular Telephone in violation of BOP disciplinary code 108.  (Resp't's Ex. 1, Attachment B, Dkt. No. 6-3.)  The incident had occurred on February 26, 2017.  The report stated as follows:



(*Id.*, Section 11.)

Ali was provided a copy of the incident report on May 11, 2017, and was advised of his rights at that time as well.  (*Id.*, Sections 15–16, 23–24.)  Ali stated that he did not want to make a statement regarding the IR:



(*Id.*, Sections 23–24.)

USP Pollock conducted Ali's UDC hearing on May 12, 2017.  At the conclusion of the hearing, the UDC referred the charge to the DHO because of the seriousness of the charge and because the potential sanctions would only be appropriate at the DHO level.  (*See id.*, Sections 18, 20.)  The UDC advised Ali of the decision and his right to appeal within 20 calendar days. (*Id.*, Section 18.)  Ali commented that he did not "know what this shot is about."  (*Id.*, Section 19.)

Upon referral to the DHO, BOP officials provided Ali with the Inmate Rights at Discipline Hearing Form.  (Resp't's Ex. 1, Attachment C, Dkt. No. 6-4.)  Ali signed the form on

May 12, 2017, acknowledging he had been advised of his rights.  (*See id.*)  Staff also provided

Ali a Notice of Discipline Hearing Before the DHO form.  (Resp't's Ex. 1, Attachment D, Dkt.

No. 6-5.)  Ali originally indicated he wished to have a staff representative:



(*See id.*)  Ali subsequently waived the staff representative and signed his name confirming as

much.  (*See id.*)  He did not request to call any witnesses at the hearing.  (*Id.*)  Ali signed this

form in the same manner as he did the Inmate Rights at Discipline Hearing Form:



(*Id.*)

Ali's DHO hearing was then held on May 16, 2017.  (Resp't's Ex. 1, Attachment E, Dkt.

No. 6-6.)  Ali confirmed at the hearing that he waived the right to a staff representative:

## II. STAFF REPRESENTATIVE:

| | A. | Inmate waived right to staff representative: | Yes | X | No | | |
|---|---|---|---|---|---|---|---|

**B. Summary of Inmate Statement:**

Inmate Ali appeared at the hearing and acknowledged receiving a copy of the incident report. He declined a staff representative and a witness. Inmate Ali understood his rights before the DHO and raised no issues about the discipline process to this point. During the DHO Hearing inmate Ali elected to make a statement. Inmate Ali stated, "Those calls were done during lockdown. I didn't have a cellphone."

(*Id.*, Section II(A), Section III.)  Ali also acknowledged he understood his due process rights and was prepared to proceed with the hearing.  (*Id.*, Section III.)  Ali confirmed he had no issues with the discipline process and stated, "[t]hose calls were done during lockdown.  I didn't have a cellphone."  (*Id.*)  In addition to waiving a staff representative and witnesses, Ali chose not to submit evidence at the hearing, and there is no indication Ali requested the DHO to review any evidence.

**V.  SPECIFIC EVIDENCE RELIED ON TO SUPPORT FINDINGS (Physical evidence, observation, written documents, etc.):**

Your due process rights were reviewed with you.  I confirmed you received a copy of the incident report, declined a staff representative, waived any witnesses, and had no documentary evidence to present.  You understood your due process rights and were prepared to proceed with your disciplinary hearing.

(*Id.*, Section V.)

At the conclusion of the hearing, the DHO found that the greater weight of the evidence supported the finding that Ali committed the prohibited act of disruptive conduct, possession of a hazardous tool (cell phone).  (*See id.*)  In making this finding, the DHO relied upon the reporting officer's statement contained in the IR and the evidence presented, which included a photograph,

call logs, and Ali's contact list.  (*Id.*, Sections III(D) & V.)  Specifically, the DHO found:

> Greater weight was given to the statements made by staff rather than inmate Ali's simple denial.  Inmate Ali's contention that he had no knowledge of a cellphone and it was during lockdown was considered but insufficient to excuse him from the offense.  The DHO relied on the retraction report indicating phone numbers dialed on the portable cellphone were consistent with phone numbers on inmate Ali's phone list.  These phone numbers are only on inmate Ali's phone list and no other inmate at USP Pollock.  Additionally, his contention that calls were made during "lockdown" was insufficient as the call log indicated the calls were made prior to January 13, 2017, when the institution was placed on lockdown.  Inmate Ali had no defense when questioned how a number on his phone list appeared on the recovered cellphone.  The possession of a cell phone by inmates and subsequent use is strictly prohibited.  The action on the part of any inmate to possess a cell phone seriously jeopardizes the security of the institution and poses a threat to the ability of staff to provide a safe environment for inmates, staff, and the general public as a whole.  Possessing a cell phone gives an inmate access to make completely unmonitored phone calls.  These calls could contain threats to the public, staff or other inmates, or plans for an escape attempt.  Additionally, cell phones can only be obtained by inmates from outside sources.  Therefore, the presence of a cell phone in the secure confines of the institution indicates the security of the institution has been breached.  Based on the greater weight of the evidence, testimony presented, and the significance of the prohibited act, the DHO finds inmate Ali committed the prohibited act of disruptive conduct most like possession of a cellphone and he was appropriately sanctioned.

(*Id.*, Section V.)

The DHO sanctioned Ali with the disallowance of 41 days of Good Conduct Time

(GCT), 30 days of disciplinary segregation (suspended pending clear conduct), 90 days loss of

commissary privileges, and 90 days loss of visiting privileges.  (*Id.*, Section VI.)  These

sanctions were imposed for the following reasons:

> The sanction against Good Conduct Time was used to comply with the mandatory sanctioning guidelines for inmates sentenced under the Prison Litigation Reform Act (PLRA).  Behavior of this nature is considered disruptive to the safety, security, and orderly operation of the institution.  Therefore, the inmate was sanctioned to disciplinary segregation to ensure the safety of all inmates and staff within the institution.  Loss of privileges was imposed to correct the

present inappropriate behavior and deter the inmate and others from
future behavior of this type.

(*Id.*, Section VII.)

Ali was advised of his right to appeal and was provided with a copy of the DHO report on

June 9, 2017:



(*Id.*, Sections VIII & IX.)

II.  ANALYSIS

**A.  Summary Judgment Standard**

The court will address this motion under the summary judgment standard, not the motion

to dismiss standard, because the court has considered matters outside of the pleadings, as detailed

above.  Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate "if

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law."  The party seeking summary judgment bears

the initial burden of showing the absence of any genuine issues of material fact.  *See Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  If the moving party meets this burden, the

nonmoving party "may not rest upon the mere allegations or denials of its pleading, but must set

forth specific facts showing there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248 (1986).

In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586.  That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial.  Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 323–25.  Although all justifiable inferences are to be drawn in favor of the non-movant, the non-moving party "cannot create a genuine issue of material fact through mere speculation of the building of one inference upon another."  *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

The court is charged with liberally construing complaints filed by *pro se* litigants, to allow them to fully develop potentially meritorious cases.  *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972).  At the summary judgment stage, however, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried.  *See Chisolm v. Moultrie*, C/A No. 4:21-03506-BHH-TER, 2023 WL 3631798, at *1 (D.S.C. May 2, 2023).  A court cannot assume the existence of a genuine issue of material fact where none exists.  Fed. R. Civ. P. 56(c).

## B.  Petitioner's Claims

Petitioner argues that he never possessed a cell phone and never had any knowledge of the phone; thus, he was not guilty of violating Prohibited Acts 108 or 199.  (Dkt. No. 1-1 at 6–7.) Petitioner also argues that he failed to receive staff representation and that the DHO was unable to review or consider the TRUFONE call log as exculpatory evidence.  (*Id.* at 7–8.)  Finally, Ali argues that the DHO officer was biased against him.  (*See id.*)

## C.  Due Process

In prison disciplinary proceedings where an inmate faces the possible loss of diminution credits, he is entitled to certain due process protections.  The Supreme Court has identified the following due process requirements for inmate disciplinary actions: (1) written notice of the charges must be given to the inmate at least twenty-four hours before his appearance in front of the prison disciplinary board; (2) prison disciplinary officers must make a written statement describing the evidence relied upon and supply reasons for any disciplinary actions; (3) the inmate must be allowed to call witnesses and present evidence at the disciplinary hearing unless allowing this would be unduly hazardous to institutional safety or correctional goals; (4) if illiterate or the hearing involves a complex matter, the inmate must be granted the opportunity to have a non-attorney representative assist him throughout the disciplinary process; and (5) the decision-maker must be impartial.  *Wolff v. McDonnell*, 418 U.S. 539, 564–71 (1974).  In these proceedings, there is no constitutional right to confront and cross-examine witnesses or to retain and be appointed counsel.  *See Brown v. Braxton*, 373 F.3d 501, 504–05 (4th Cir. 2004).

A prison disciplinary decision comports with the requirements of due process if "some evidence" supports the decision by the prison disciplinary board.  *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985).  Federal courts do not review the correctness of a disciplinary hearing officer's findings of fact.  *See Mahammend v. Green*, Civil Action No. JKB-23-1338, 2023 WL 8777805, at *3 (D. Md. Dec. 19, 2023).  The findings will only be disturbed when unsupported by any evidence, or when wholly arbitrary and capricious.  *See Hill*, 472 U.S. at 456; *Tyler v. Hooks*, 945 F.3d 159, 171–72 (4th Cir. 2019).

Petitioner argues that, unlike others involved in the incident, he was only associated with phone numbers called on the cell phone, and there is no direct association of those numbers other than being listed on his approved contact list.  Thus, Ali argues that those phone numbers being

in that cell phone does not prove Ali had possession of the phone; instead, it proves someone had possession of a phone number that Ali also had possession of. (Dkt. No. 1-1 at 6–7.)

These arguments are insufficient in light of the relevant standard that due process only requires that "some evidence" support the DHO's decision. *Hill*, 472 U.S. at 455. This standard "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455–56. Here, evidence before the DHO was a forensics report that confirmed the phone numbers dialed on the cell phone were identical to phone numbers on Ali's contact list maintained by the BOP. (*See* Resp't's Ex. 1, Attachment E.) Moreover, the report confirmed that the numbers called were only on Ali's contact list, not any other inmate at USP Pollock. (*See id.*) Further, it was determined that two of the three numbers contacted by Ali on the cell phone were not on any other inmate's contact list in the entire BOP. (Resp't's Ex. 1, Attachment B.) This is sufficient to meet the "some evidence" standard for purposes of due process.

Ali also argues that he was deprived of due process due to not being afforded a staff representative; yet, the record is clear that Ali waived this right, to the extent that it exists. Ali asserts, under penalty of perjury, that as it pertains to the request for a staff representative, after "the conclusion of the DHO hearing the record was forged and fabricated accordingly to support the proceeding." (Dkt. No. 8 at 3.) This bald assertion is not enough to create an issue of fact. *See United States v. Roane*, 378 F.3d 382, 400–01 (4th Cir. 2004) ("Airy generalities, conclusory assertions and hearsay statements [do] not suffice to stave off summary judgment."); *see also Jones v. Stamper*, No. 1:12cv352 (AJT/IDD), 2013 WL 6448847, at *2 n.2 (E.D. Va. Dec. 6, 2013) (explaining that a *pro se* prisoner's sworn pleading or brief with a "declaration under oath . . . is not enough to defeat a motion for summary judgment. He has to provide a basis for his

11

statement.  To hold otherwise would render motions for summary judgment a nullity").  Even if it could, it does not follow that Ali's due process rights were violated because the right to a staff or non-attorney representative only applies when the petitioner is illiterate or the matter is complex.  Ali argues that he should be considered illiterate as evidenced by his statement "I don't know what this shot is about" before the DHO hearing.  (*Id.* at 6.)  Ali also notes that this was his first time ever appearing before the DHO, and he did not understand the proceedings. (*Id.*)  Ali further relies on the fact that he is a native of Somalia, English is his second language, and he did not complete twelve years of education.  (Dkt. No. 10 at 4.)  Ali's allegations of supposed illiteracy are contradicted by his allegations and pleadings in this and other cases.  *See, e.g.*, *Ali v. Streeval*, Civil Action No. 7:22-cv-00404 (W.D. Va.)  Ali does not contend that he does not understand the English language.  *Cf. Reyes v. Clarke*, Civil Action No. 3:18CV611, 2019 WL 4044316, at *22 (E.D. Va. Aug. 27, 2019) (explaining that *Wolff* due process claim could survive given allegation that proceedings were conducted in English, "a language he does not understand").  As to complexity, a representative may be required when "the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case."  *Wolff*, 418 U.S. at 570.  The only issue in this case is whether Ali used a cell phone, which was not complex.  Ali has therefore not shown that he required the assistance of a fellow inmate or staff representative.

Finally, Ali alleges that the DHO officer attempted to manipulate BOP policies and was biased against him.  (Dkt. No. 1-1 at 6.)  Prison hearing officers are not held to the same standard of neutrality as judges in criminal proceedings.  *Chestnut v. Lue*, No. 7:19-cv-00455, 2019 WL 6352656, at *5 (W.D. Va. Nov. 27, 2019).  For the court to find the DHO less than impartial, "there must be some substantial countervailing reason to conclude that he was actually biased with respect to factual issues being adjudicated."  *Id.* (quoting *Gwinn v. Awmiller*, 354 F.3d

1211, 1220 (10th Cir. 2004)); *see also Wolff*, 418 U.S. at 492 (Marshall, J., concurring) ("[D]ue process is satisfied as long as no member of the disciplinary board has been involved in the investigation or prosecution of the particular case or has had any other form of personal involvement in the case."); 28 C.F.R. §541.8(b) ("The DHO will be an impartial decision maker who was not a victim, witness, investigator, or otherwise significantly involved in the incident.").

In response to the respondent's motion, Ali argues that the DHO investigated the case *and* heard the case.  (Dkt. No. 8 at 8–9.)  This is simply incorrect—the Incident Report was completed by Officer M. Hastings (Dkt. No. 6-3), and the DHO who conducted the hearing and issued the report and findings was B. Valle (Dkt. No. 6-6).

For these reasons, the court will grant the motion for summary judgment on Ali's due process claims.

## III.  CONCLUSION

For the foregoing reasons, the court will issue an appropriate order granting respondent's motion for summary judgment and dismissing this matter with prejudice.

Entered: March 24, 2024.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge

13